## Baumgardner et al. *versus* Burnham et al.

1. In an action on a book-account for work and materials in the repair of a locomotive the claim was attacked as excessive. *Held*, that the true question for the jury was what was the ordinary price for such work and materials charged by other persons in the same business.

2. In said action the court charged the jury: "It is not your province to say how much profit ought to be charged by the plaintiffs." *Held*, that this was error; that the court should have contented itself with saying: "You are not to set yourselves up as judges of what locomotive engine builders ought to charge as profits, but simply whether the charges in the plaintiff's bill are the usual charges in the trade."

3. Per SHARSWOOD, C. J.—"It will always be well for the learned judges of the courts below to see to it that so much of their charges at least are set out as may be necessary to explain the particular points excepted to."

January 21st 1880. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Error to the Court of Common Pleas, No. 3, of *Philadelphia county:* Of January Term 1879, No. 102.

[Baumgardner *v.* Burnham.]

Assumpsit by George Burnham and others, trading as Burnham, Parry, Williams & Co., against Henry Baumgardner and William F. Lockhard, trading as Henry Baumgardner & Co., to recover for work done and materials furnished in the repair of a locomotive.

The declaration contained the common counts only, with a copy of the book-account as a bill of particulars. The following facts, with those set forth in the opinion of this court, sufficiently state the case. Mr. Baumgardner sent to the plaintiffs a locomotive for repair. Previously there had been a correspondence in regard to the repairs, in which plaintiffs had written: "We estimate the cost of the above repairs at from $1000 to $1200." On the return of the engine it was still found to be unfit for use, and was sent back to plaintiffs at an estimated cost of $210 for additional repairs. The locomotive was returned with bills for repairs amounting in the aggregate to $2552.79, which the defendants refused to pay, when this suit was brought.

The plaintiffs admitted that they charged for material at the usual rates, which included a profit to them, and that they added to the labor 100 per cent. for the use of tools, interest, fuel, gas, clerk hire, &c., and twenty-five per cent. more for profit.

Messrs. Baumgardner asserted that this was too much, and showed by Hugh B. Garrett, master mechanic of the West Philadelphia Railroad shops, that the amount to be added to the actual labor, in doing such work as this, to cover cost of tools and machinery, is but fifteen per cent., and that in doing work for other roads the Pennsylvania Railroad Co. add fifty per cent. to cover cost and profit. "This bill," he said, "is a question of profits."

In charging the jury, the court, Finletter, J., inter alia, said: "It is not your province to say how much profit ought to be charged by the plaintiffs."

The verdict was for the plaintiffs for $2900.30, and after judgment thereon, defendants took this writ, and alleged that the court erred in the above portion of the charge.

*John R. Read* and *Silas W. Pettit,* for plaintiffs in error.— Inasmuch as there was no special contract for repairing the engine, the estimates which were much less in amount than the bills finally presented, are conceded to have been approximations only—the claim of the plaintiffs below was simply on a *quantum meruit ;* in such action the question is, what ought the defendants to pay, and what ought the plaintiffs to have: Cole *v.* Clark, 3 Wis. 323 ; Stockbridge *v.* Crooker, 34 Me. 349 ; Edington *v.* Pickle, 1 Sneed (Tenn.) 122.

The defendants contend that they were not bound absolutely by the prices that the plaintiffs might choose to charge them with, but had a right to question their fairness, their sole contention

[Baumgardner *v.* Burnham.]

being that they had been grossly overcharged. Having no means of disputing the accuracy of the various items of work done and materials furnished in making the repairs, they admitted them; but denied that multiplying the actual cost of the labor employed on the work by two and a half was a fair charge, and averred that the profits so charged upon the work and materials were exorbitant. The defendants had shown that a reasonable reward to plaintiffs included only fifty per cent. advance on wages paid, and thereby it became the province of the jury to say whether an addition of 150 per cent. was not an unreasonable and unfair charge.

*John G. Johnson*, for defendants in error.—It is to be hoped that the practice adopted in this case, by the defendants, of isolating a sentence of the charge, and of excepting thereto, without giving any of the context, will not be encouraged. Were the whole charge before this court, no assignment of error could be seriously maintained. Can it be, that in every suit for materials furnished and for work done, the defendants, without any evidence contradicting plaintiffs' proof that the price charged is the market or ordinary one, may be allowed to ask a jury to examine how much profit is included in the latter, and to find a verdict for less than such price, if they think the same, though usual, is too much? To do so, will be to open the door to inquiries, intricate in length, and expensive beyond endurance. There can certainly be no denial of the fact that the plaintiffs were entitled to the "market" or "ordinary" price of their work. There was no evidence that they charged more; but positive evidence that they did not. The ordinary or usual price of work includes the usual profit. If the jury had awarded less than such usual profit, this would have denied to the plaintiffs the usual price of similar work.

Chief Justice SHARSWOOD delivered the opinion of the court, February 16th 1880.

It is very probable that if the full charge had appeared on the bill of exceptions, this judgment would not have been reversed. It will always be wise for the learned judges of the courts below to see to it that so much of their charges at least are set out as may be necessary to explain the particular parts excepted to. We have here a single isolated sentence taken from the charge without any thing that went before or came after. It may possibly have been harmless, but as it stands, we think it was calculated to mislead the jury.

The action was on a book account for work and materials in the repair of a locomotive. The claim was attacked as excessive. The true question for the jury was, what was the ordinary price for such work and materials charged by other persons in the same

[Baumgardner v. Burnham.]

business as that of the plaintiffs.   Their book was prima facie evidence not only of the work done and materials furnished, but of the prices.   They gave further evidence, however, of the character of the repairs, to show that there had nothing been done but what was necessary to put the engine in complete working order.   The defendants then introduced testimony as to the prices charged in other establishments, and proved without objection, the profit they added on the amount paid for labor.   Garrett, a master mechanic in the West Philadelphia railroad shops, said : " In the railroad company where I was employed before going with the Pennsylvania Railroad, the point came up as to what ought to be added to the actual labor to cover the cost of tools and machinery.   The president wanted to bring it down to the actual cost on some work done for another road, and we considered that fifteen per cent. added would cover.   In the Pennsylvania Railroad, we add fifty per cent. on work done for other roads to cover cost and profits. This bill is a question of profits, and I cannot speak for others." The plaintiffs in rebuttal called one of their number, who said : " There are general expenses which cannot be assigned to any particular piece of work ; as for instance, tools and the maintenance of tools, stationary-engine, boilers and machinery, gas, clerks, office expenses, interest, &c.   The one hundred per cent. added to the actual cost for labor is to cover these general expenses, and we add twenty-five per cent. for profit."   Now, if the learned judge had intended to instruct the jury that it was not their province to determine what ought to be the rate of profit in any particular business, it would not have been error.   That is settled at the lowest rate at which the business can be carried on by the effect of free competition in the market.   Prices, where there is no monopoly, naturally settle down as near as may be to the ordinary profits on invested capital.   There are many apparent exceptions, however.   Such is the case of an apothecary, who must add to ordinary profits on the materials he uses, a liberal compensation for his own skill, acquired by years of patient study and apprenticeship, as well as the cost of attending lectures, and, moreover, there is to be added a premium for the responsibility he incurs for himself and his employees.   Hence, considering the small sum he pays for his materials, and the short time it takes to compound a prescription, to the unthinking, his profits would seem out of all proportion to the rate of ordinary profits in other business.   The same thing, though not to the same effect, may be true of locomotive engine builders.   They must have skilled workmen, scientific superintendents, with a great outlay of capital, and also responsibility for the safety of those who put in operation the works they send out.   If the learned judge then had contented himself with saying to the jury : " You are not to set yourselves up as judges of what locomotive engine builders ought to charge as profits, but simply whether the charges

[Baumgardner *v.* Burnham.]

in the plaintiff's bill are the usual charges in the trade," there would have been no error, but he went much further where he instructed them : " It is not your province to say how much profit ought to be charged by the plaintiffs." That profits necessarily entered into the price was shown by the evidence on both sides, and how could the jury decide intelligently as to the price without considering what was the usual rate of profits and whether the plaintiff's charges conformed thereto?

Judgment reversed and a *venire facias de novo* awarded.